UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS L. HALL ET AL                          CIVIL ACTION

VERSUS                                        NO: 08-4478

HORACE MANN INSURANCE                         SECTION: J(5)
COMPANY

## ORDER AND REASONS

Before the Court is Defendant Horace Mann Insurance Company's ("Horace Mann") **Motion for Partial Summary Judgment (Rec. Doc. 11)**, which seeks an order dismissing Plaintiffs' claims under their Horace Mann homeowners insurance policy for any additional living expenses ("ALE") in excess of $10,000 due to a loss caused by mold.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

On or around September 29, 2006 Plaintiffs discovered a leaking pipe in their home in Terrebonne Parish and filed a claim under their Horace Mann homeowners policy ("the Policy"). Eventually, mold developed as a result of the leaking pipe, and Plaintiffs were forced to move and reside in several locations over the course of a year, pending extensive repairs to their home to remediate the damage caused by the leak.

Although Horace Mann paid various amounts under coverages A,

C, and D of the Plaintiffs' policy,[1] Plaintiffs filed suit in the 32nd Judicial District, Parish of Terrebonne, seeking payments for ALE, property damage, and bad faith damages under Louisiana Revised Statutes §22:658. Horace Mann removed the suit to this Court on September 25, 2008, citing diversity jurisdiction.

## THE PARTIES' ARGUMENTS

Horace Mann contends that Plaintiffs' ALE were incurred as a result of the presence of mold in their home. As such, Horace Mann cites the following provision in the endorsements to Plaintiffs' policy, which it alleges limits coverage of any mold-related ALA to a total of $10,000:

> The following incidental Property Coverage is added. It is subject to all the "terms" of the applicable coverages A, B, or C.
>
> **Limited Wet Rot, Dry Rot, Bacteria, Fungi, and Protists - We** pay for:
>
> a)   Direct physical loss to property covered under Coverages A, B, or C, caused by, resulting from, or consisting of wet rot, dry rot, a bacterium, a fungus, or a protist, including mildew and mold, or a compound produced by or released by wet rot, dry rot, a bacterium, a fungus, or a protist, when the presence of the wet rot, dry rot, bacterium, fungus, protist,

---

[1] Plaintiffs were paid $189.43 for cleaning supplies and groceries under Coverage C; a total of $3510.18 for hotel rooms and pet boarding for the months of September and October, 2006 under Coverage D; and $3653, $566, and $2836.82 for mold testing, water mitigation, and as the remainder of mold limits (respectively) under Coverage A.

>       chemical, matter, or compound is the direct
>       result of a peril insured against that applies
>       to the damaged property.
>
>    * * *
>
>    b)  the necessary and reasonable increase in costs
>        you incur to maintain your normal standard of
>        living when the insured premises is made unfit
>        for use by a loss caused by, resulting from,
>        or consisting of wet rot, dry rot, a
>        bacterium, a fungus, or a protist, including
>        mildew and mold . . . when the presence of the
>        wet rot, dry rot, bacterium, fungus, protist,
>        chemical, matter, or compound is the direct
>        result of a peril insured against.
>
>        This is the only coverage provided under this
>        policy for damage, loss, or cost caused by,
>        resulting from, or consisting of wet rot, dry
>        rot, a bacterium, a fungus, or a protist,
>        including mildew and mold **. . . .**
>
>    * * *
>
>        The most we pay for Property Damage loss and
>        cost covered under the incidental Limited Wet
>        Rot, Dry Rot, Bacteria, Fungi, and Protists
>        Coverage is $10,000 regardless of the number
>        of locations covered by this policy or the
>        number of claims made.

Rec. Doc. 12-2, Horace Mann Policy, at p.48 (emphasis in original) (herein after "Mold Endorsement"). Horace Mann contends that the ALE claimed by Plaintiffs were caused by mold, and thus subject to the $10,000 limit.

In opposition, Plaintiffs contend that the $10,000 limit in the Mold Endorsement is inapplicable for several reasons. First,

Plaintiffs argue that although Horace Mann generally characterizes their claim as a "mold claim," their claim is much broader. While it is true that part of their damages resulted from the presence of mold, Plaintiffs argue that their claim could also be characterized as a slab repair claim or a pipe repair claim. In support of this position, Plaintiffs have submitted their own deposition statements indicating that the damages to their home were beyond mere mold damages. Rec. Docs 14-2 & -4. Likewise, Plaintiffs have submitted entries from Horace Mann's adjustor's diary for their claim, which indicate that there was a distinction drawn between *mold* damage versus *water* damage during the adjustment of Plaintiffs' claims. Rec. Doc. 14-6. Based on these statements, Plaintiffs argue that there is a question of fact as to whether their ALE were incurred as a result of *mold* damage, or rather as a result of pipe damage, water damage, or some other covered and non-limiting cause.

Additionally, Plaintiffs note that, according to the schedule of payments under the policy, their first ALE payments under Coverage D were made prior to a *water mediation* payment on November 15, 2006. Plaintiffs argue that this chronology reveals that the water mediation payment was clearly not for *mold* remediation. Thus, because they received their first Coverage D ALE payment prior to a water remediation payment and *before any*

*mold remediation payment*, there is a clear question of fact regarding whether and when their claim was characterized as a mold claim. Thus, Plaintiffs argue that this chronology precludes summary judgment on the issue of whether the Mold Endorsement applies to their ALE claim.

Furthermore, Plaintiffs argue that, notwithstanding the alleged factual questions noted above, the Mold Endorsement does not apply on its own terms. First, Plaintiffs note that the Policy *does not contain a mold exclusion* in its initial terms. Rather, Horace Mann points to the Mold Endorsement for its arguments. Plaintiffs further note that, although the declarations sheet refers to the Mold Endorsement as an exclusion, the Mold Endorsement itself is listed as a "Limited Coverage." Rec. Doc. 12-2, pp. 3 & 47. Additionally, Plaintiffs point out that, since the Policy itself does not *exclude* mold coverage, it is unclear why the Mold Endorsement purports to *limit* mold coverage while at the same time *adding* such coverage to the policy. Plaintiffs argue that the language purporting to *add and limit* mold coverage that is not excluded in the Policy itself is ambiguous, if not contradictory.

Finally, Plaintiffs argue that the language of the Mold Endorsement itself requires a finding of coverage for their ALE claim. Specifically, Plaintiffs note that the Coverage D ALE

5

provision provides as follows:

> **Coverage D – Additional Living Costs and Loss of Rent Coverage – We** pay the necessary and reasonable **increase in living costs** you incur to maintain the normal standard of living in your household if a part of the insured premises is made unfit for use by an insured loss.

Rec. Doc. 12-2 at p. 7 (emphasis added). However, the Mold Endorsement omits the word "living" from its provisions regarding increased costs for maintaining the standard of living:

> **We** pay for . . . the necessary and reasonable **increase in costs** you incur to maintain your normal standard of living when the insured premises is made unfit for use by a loss caused by, resulting from [mold, etc.].

Id. at p.48. Plaintiffs argue that the omission of the word "living" from the Mold Endorsement indicates that the Coverage D ALE provision was intended to be distinct from the limiting provision in the Mold Endorsement. As such, due to this distinction and/or ambiguity, the Policy must be construed to provide ALE coverage beyond the $10,000 limit.

In reply, Horace Mann argues that the Mold Endorsement limits coverage to $10,000 for any damages *caused by mold* to structure (Coverage A), other structures (Coverage B), contents (Coverage C), *or in the form of ALE* (Coverage D). Horace Mann argues that Plaintiffs seem to concede that structure and contents damages clearly come under the Mold Endorsement limit,

6

but argue that ALE does not.  However, Horace Mann contends that a plain reading of the Mold Endorsement indicates that ALE also falls within the limitation.  Horace Mann argues that Plaintiffs' mincing distinction of the Coverage D ALE definition and the language of the Mold Endorsement attempts to create an ambiguity where none exists.  Specifically, the Coverage D definition provides coverage for "additional living costs" which are "the necessary and reasonable increase in living costs" to maintain the insured's normal standard of living when the property is rendered unlivable by a covered loss.  The Mold Endorsement similarly *limits* coverage for "necessary and reasonable costs" required to maintain the insured's standard of living after the insured property is rendered unlivable by a mold-related loss.  As such, Horace Mann argues that Plaintiffs' argument regarding the absence of the adjective "living" in the Mold Exclusion amounts to nothing more than an exercise of inventive powers to create ambiguity where non exists.  See Succession of Fannaly v. Lafayette Ins. Co., 805 So. 2d 1134, 1138 (La. 2002).  Horace Mann contends that Plaintiffs' attempted distinction is an improper attempt to dissect and overanalyze the Policy into absurdity.

## DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

**B.   Interpretation of the Policy under Louisiana Law**

In this case, Louisiana law is applicable because the provisions of an insurance policy are interpreted in accordance with the law of the state where the policy was issued. Adams v. Unione Mediterranea Di Sicurta, 220 F.3d 659, 677-78 (5th Cir.2000). Louisiana law provides that if the language in an insurance policy is clear and unambiguous, the policy should be enforced as written. Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc., 958 So.2d 634, 638 (La.2007). In interpreting a contract, a court must interpret "each provision of a contract . . . in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code

art.2050. The words and phrases used in an insurance policy should be construed using their plain and generally prevailing meaning, unless those words have acquired a technical meaning. La. Civ. Code 2047. If after applying the general rules of contract, an ambiguity remains, the ambiguous contractual provision must be construed against the insurer and in favor of coverage as per the rule of strict construction. <u>McGuire v. Am. So. Home Ins. Co.</u>, 969 So.2d 681, 684 (La. App. 4th Cir.2007).

**C. Application**

The Court concludes based on the language of the Policy and the Mold Endorsement, that the Mold Endorsement applies to limit ALE Coverage caused by mold to the $10,000 total limit provided in the Mold Endorsement. As such, Horace Mann's partial motion for summary judgment should be granted.

First, the Court concedes, as noted by Plaintiffs, that the language of the Mold Endorsement, which purports to add limited coverage for mold-related damages, is curious given that *the Policy itself <u>does not exclude coverage for mold-related damage</u>*. However, the plain language of the Mold Endorsement renders the $10,000 limitation applicable to Plaintiffs' ALE claims. ALE coverage under Coverage D of the Policy is defined as:

> the necessary and reasonable **increase in living costs you incur to maintain the normal standard of living** in your household if a part of the insured premises is made unfit

9

for use by an insured loss.

Rec. Doc. 12-2 at p. 7 (emphasis added).  In comparison, the Mold Endorsement provides *essentially the same language* in defining costs that fall within the endorsement:

> the necessary and reasonable **increase in costs you incur to maintain your normal standard of living** when the insured premises is made unfit for use by a loss caused by [mold, etc] . . . .

Rec. Doc. 12-2 at p.48.  This language in the Mold Endorsement can only be reasonably construed to apply to costs as defined in Coverage D.  As such, because the Mold Endorsement limits recovery for "Property Damage loss **and cost** covered under the [Mold Endorsement]" to $10,000, Plaintiffs' claims for ALE *caused by mold* are necessarily limited to the $10,000 amount provided by the Policy.

Further, the Court rejects Plaintiffs' arguments regarding the omission from the Mold Endorsement of the word "living" as a modifier of the word "costs."  While the language of the Mold Endorsement for the most part tracks the language of the provisions for ALE coverage under Coverage D, the Mold Endorsement specifically excludes the adjective "living" from its limitation on coverage of costs.  This slight difference in language, however, is trivial in light of the substantially

10

identical language in both the Coverage D provision and the Mold Endorsement.  As such, the Plaintiffs' arguments on this point are unpersuasive.  Accordingly,

**IT IS ORDERED** that Horace Mann's **Motion for Partial Summary Judgment (Rec. Doc. 11),** is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims in excess of $10,000 for ALE due to a loss caused by mold in their home are hereby **DISMISSED WITH PREJUDICE.**[2]

New Orleans, Louisiana, this 29th day of May, 2009.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[2] The Court clarifies that the instant ruling dismisses *only* Plaintiffs' claims for ALE caused by the presence of mold in their home.  To the extent Plaintiffs assert claims for ALE caused by water damage or some other covered, non-excluded and non-limited loss under the Policy, this Order does not preclude Plaintiffs from pursuing those claims at the trial of this matter.